IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER CUSH, <br> JENNIFER MCFEE, <br> STACY MCCALL, <br> GAVIN BLISS, and <br> COURTNEY MORTON <br><br>                 Plaintiffs, <br><br> v. <br><br> HOST INTERNATIONAL, INC. d/b/a HMS HOST d/b/a TGI FRIDAYS, <br><br>                 Defendant. | Civil Action No. 2:23-CV-953 <br><br> **JURY TRIAL DEMANDED** |

## CIVIL COMPLAINT

Plaintiffs, Jennifer Cush, Jennifer McFee, Stacy McCall, Gavin Bliss, and Courtney Morton ("Plaintiffs"), by their undersigned counsel, file this Complaint and allege the following:

### I.     JURISDICTION

1. This Court has jurisdiction over Plaintiffs' Fair Labor Standards Act (FLSA) claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to their FLSA claims that they form part of the same case or controversy.

3. Further, this Court has jurisdiction over all of Plaintiffs' claims under 28 U.S.C. § 1332.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred in this District.

5. This Court is empowered to issue declaratory judgment pursuant to 28 U.S.C. §§

2201 and 2202.

## II. PARTIES

6. Plaintiff Jennifer Cush is an adult individual who resides in Carnegie, Pennsylvania. She is a former employee of Defendant.

7. Plaintiff Jennifer McFee is an adult individual who resides in Crescent, Pennsylvania. She is a current employee of Defendant.

8. Plaintiff Stacy McCall is an adult individual who resides in New Waterford, Ohio. She is a current employee of Defendant.

9. Plaintiff Gavin Bliss is an adult individual who resides in Pittsburgh, Pennsylvania. He is a current employee of Defendant.

10. Plaintiff Courtney Morton is an adult individual who resides in Youngstown, Ohio. She is a former employee of Defendant.

11. Defendant Host International, Inc., d/b/a HMS HOST, d/b/a TGI Fridays, is a Delaware corporation with a principal place of business at 6905 Rockledge Drive, Bethesda, MD 20817.

12. Upon information and belief, Defendant was doing business as HMS HOST d/b/a TGI Fridays ("TGI Fridays Location," the "Restaurant") at 1000 Airport Blvd Concourse D, Gate D-76, Pittsburgh, PA 15231, until March 31, 2023, operating a restaurant under the name TGI Fridays at the indicated location.

13. Upon information and belief, Defendant has, at all relevant times, had gross revenues in excess of $500,000.

14. Upon information and belief, Defendant has at all relevant times, and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§

206(a) and 207(a).

15. At all times relevant hereto, Defendant were Employers within the definition of the FLSA.

16. Pursuant to 29 U.S.C. § 203(d), an "Employer" under the FLSA includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."

17. At all times relevant hereto, Defendant were Employers within the definition of the Pennsylvania Wage Payment and Collection Law ("WPCL").

18. Pursuant to 43. P.S. § 260.2a, "Employer" includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of the above-mentioned classes employing any person in this Commonwealth.

19. Pursuant to 43 P.S. §333.103, an "Employer" includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employee.

20. At all times relevant hereto, Defendant were Employers within the definition of the Pennsylvania Minimum Wage Act ("PMWA").

### III.   FACTUAL BACKGROUND

21. Plaintiff Cush was employed by Defendant starting in or around July of 2018, until on or around March 21, 2023. Ms. Cush was employed as a server and a bartender by Defendant at the TGI Fridays Location at all times during her employment. During her employment, Ms. Cush was paid the sub-minimum wage of $2.83 per hour worked.

22. Plaintiff McFee has been employed by Defendant starting in or around April of 2019. Ms. McFee was employed as a server and a bartender by Defendant at the TGI Fridays

Location from April of 2019 to March 31, 2023. During this time, Ms. McFee was paid the sub-minimum wage of $2.83 per hour worked.

23. Plaintiff McCall was employed by Defendant starting in or around April of 2019 until March 31, 2023. Ms. McCall was employed as a server and bartender by Defendant at the TGI Fridays Location at all times following the start of the COVID-19 pandemic shut down in or around March 2020. During her employment as a server and bartender, Ms. McCall was paid the sub-minimum wage of $2.83 per hour worked.

24. Plaintiff Bliss has been employed by Defendant since approximately April of 2019. Mr. Bliss was employed as a food runner from approximately April of 2019 until March of 2020. Mr. Bliss has been employed as server and a food runner by Defendant at the TGI Fridays Location since approximately February of 2021. During the time Mr. Bliss was working as a food runner, he was paid $15.00 per hour worked. During the time Mr. Bliss was working as a server, he was paid the sub-minimum wage of $2.83 per hour worked.

25. Plaintiff Morton was employed by Defendant at the TGI Fridays Location starting in or around October 2018 until in or around March 10, 2023. Ms. Morton was employed as a server by Defendant at the TGI Fridays Location at all times during her employment. During her employment, Ms. Morton was paid the sub-minimum wage of $2.83 per hour worked.

26. Server duties included, but were not limited to, seating customers, taking customer orders, serving customers food and drink, maintaining their work areas, rolling silverware, and cleaning and prepping tables to prepare for more customers.

27. Bartender duties included, but were not limited to, taking customer drink orders, making drinks for customers, serving drinks to customers, restocking the bar, prepping fruits, cleaning glasses for serving drinks, and cleaning the bar in preparation for more customers.

28. In or around March of 2020, Defendant's TGI Fridays Location shut down in response to the COVID-19 pandemic.

29. Plaintiffs were not working at TGI Fridays during the COVID-19 pandemic shutdown.

30. In or around October of 2020, Plaintiffs were called back to work as TGI Fridays reopened.

31. In or around December of 2020, the servers were furloughed again, while the bartenders continued working.

32. In or around January of 2021, the servers were called back to work.

33. From the time Plaintiffs returned to work after the COVID-19 shutdown in or around March 2020 forward, the TGI Fridays was significantly understaffed.

34. Plaintiffs were regularly expected to work without a manager, host, dishwasher, expo and/or a cook.

35. Plaintiffs were regularly expected to perform the duties of a manager, host, dishwasher, expo and/or a cook in addition to their other job duties as bartenders and/or servers.

36. Plaintiffs frequently spent more than half of their shifts performing the duties of managers, hosts, dishwashers, expo and/or cooks. Representative duties of managers, hosts, dishwashers, expo's and cooks are summarized below:

   a. Manager duties include creating schedules for the workers, ordering food and serving materials, handling customer disputes, remedying transactional issues, taking out trash, and maintaining general operations.

   b. Host duties include greeting customers, seating them, and organizing and maintaining menus.

  c. Dishwasher duties include cleaning and organizing dishes, distributing the dishes to their proper places in the Restaurant, and cleaning floor mats.

  d. Expo duties include stocking plates, traying food, preparing side sauces for the food, and checking prepared foods for accuracy to the orders.

  e. Cook duties include preparing and cooking food, fulfilling customer orders, stocking foods, and maintaining and cleaning the prep and cooking stations.

37. The duties of managers, hosts, dishwashers, expo and/or cooks and hosts are distinct from the duties of servers and bartenders, and do not result in tips from customers.

38. On information and belief, those employees hired by Defendant as managers, hosts, dishwashers, expo or cooks are compensated either on a salaried or hourly basis, depending on the position, but in all cases are paid by Defendant at a rate higher than $2.83 per hour.

39. Plaintiffs were paid by Defendant at the sub-minimum wage of $2.83 per hour worked throughout their employment, regardless of the duties they performed.

40. Plaintiffs frequently and/or regularly attempted to contact Defendant to alert Defendant to the absence of, as applicable, managers, hosts, dishwashers, expo or cooks at the TGI Fridays Location.

41. Defendant occasionally sent "stand-in" managers from other locations to fill in when the Restaurant did not have a manager.

42. Plaintiffs spoke with stand-in managers each time they were present about the lack of proper staffing for the various roles in the Restaurant.

43. Plaintiffs had more than 50 conversations with stand-in managers about the lack of employees to perform the roles of (as applicable) managers, hosts, dishwashers, expo or

cooks.

44. Plaintiffs called Defendant more than 100 times about a lack of employees to perform the roles of (as applicable) managers, hosts, dishwashers, expo or cooks.

45. Plaintiffs went in person to the HMSHost office located within the airport to specifically address concerns about a lack of employees to perform the roles of (as applicable) managers, hosts, dishwashers, expo or cooks on more than 10 occasions.

46. Plaintiffs regularly reported to Defendant that they were performing the duties of (as applicable) managers, hosts, dishwashers, expo and/or cooks, while they were employed and paid as servers and/or bartenders.

47. The Defendant told the Plaintiffs to "figure it out" or "make it work" repeatedly when they complained that they were performing the duties of multiple positions at once.

48. Defendant was on notice that, with consistent lack of employees to perform the roles of (as applicable) managers, hosts, dishwashers, expo or cooks, and the restaurant still operating, and information provided by Plaintiffs to Defendant, Plaintiffs were performing the duties of managers, hosts, dishwashers, expo and/or cooks, while they were employed and paid sub-minimum wage as servers and/or bartenders.

49. In accordance with Defendant's requirements, Plaintiffs clocked in and out electronically for payroll purposes using designated codes to indicate their positions as servers/bartenders.

50. At no time did Defendant have Plaintiffs clock in under a different code or pay the Plaintiffs the full minimum wage, instead electing to continue to pay them sub-minimum wage and continuing to claim the tip credit despite the fact that these employees could not earn tips during this time.

51. Defendant knew or should have known that the Plaintiffs were performing the duties of managers, hosts, dishwashers, expo and/or cooks for more than 20 percent of their shifts, or for periods of 30 continuous minutes or more, while receiving the lower pay of servers and/or bartenders.

52. Defendant has thus intentionally, willfully, and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA, the WPCL, and the PMWA with respect to Plaintiffs. This pattern, practice and/or policy includes but is not limited to willfully failing to pay Plaintiffs at least $7.25 per hour worked.

53. Defendant's failure to comply with the FLSA, WPCL, and PMWA was willful and caused Plaintiff to suffer lost wages and interest thereon.

54. Defendant's unlawful conduct has been widespread, repeated, and consistent over the course of at least three years.

## COUNT I – FAIR LABOR STANDARDS ACT

55. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 54 as if fully restated herein.

56. Tipped workers are defined as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 USCS § 203(t).

57. Plaintiffs earned more than $30 a month in tips, making them tipped employees.

58. "In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—

> (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on the date of the enactment of this paragraph [enacted

    August 20, 1996]; and

    (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under [29 USCS § 206(a)(1)]."

29 USCS § 203(m)(2).

  59. Employees must earn at least $2.13 in hourly pay by their employers, and enough in tips such that their wages equal at least $7.25 per hour worked. This is called a "tip credit" for the employer, as it permits them to pay their tipped employees a sub-minimum wage which is less than $7.25 per hour worked. 29 USCS § 203(m)(2).

  60. Plaintiffs are or were employed as tipped employees by Defendant. They were paid a sub-minimum wage of $2.83 per hour worked.

  61. Federal regulations provide guidance for when tipped employees also perform non-tipped work, including the following:

    a. "In some situations an employee is employed in dual jobs, as, for example, where a maintenance person in a hotel also works as a server. In such a situation the employee, if the employee customarily and regularly receives at least $30 a month in tips for the work as a server, is engaged in a tipped occupation only when employed as a server. The employee is employed in two occupations, and no tip credit can be taken for the employee's hours of employment in the occupation of maintenance person." 29 CFR 531.56(e).

    b. "An employee is engaged in a tipped occupation when the employee performs work that is part of the tipped occupation. An employer may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped

occupation." 29 CFR 531.56(f).

c. "Work that is part of the tipped occupation is: (i) Work that produces tips; and (ii) Work that directly supports the tip-producing work, if the directly supporting work is not performed for a substantial amount of time." 29 CFR 531.56(f)(1).

d. "Tip-producing work is any work performed by a tipped employee that provides service to customers for which the tipped employee receives tips." 29 CFR 531.56(f)(2).

62. Plaintiffs performed the duties of non-tipped workers, including managers, hosts, dishwashers, expo and/or cooks. As such, they were employed in "dual jobs."

63. Plaintiffs spent substantial portions of their work shifts performing the duties of non-tipped positions, regularly spending an excess of 20 percent of their workweek, and/or periods exceeding 30 continuous minutes, performing non-tip-producing work.

64. Plaintiffs regularly performed non-tip-producing side work, including prep work at the beginning of the shift (prepping the workstation and stocking items), running side work (cleaning the work area and restocking items that customers used) and closing side work (breaking down and cleaning work area at end of shift) for at least 20 percent of their workweek, and/or periods exceeding 30 continuous minutes.

65. Despite Plaintiffs spending substantial portions of their work shifts performing non-tipped work, including in their roles as dual job holders and through their side work, Plaintiffs were never paid more than $2.83 an hour.

66. As a result of the aforementioned pay practices, Plaintiffs were illegally under-compensated for their work.

67. As a result of Defendant's violations of the FLSA, Plaintiffs have suffered for up

to three years, and continue to suffer, damages, including but not limited to:

    a. Unpaid wages;

    b. Costs and expenses of litigation; and

    c. Attorneys fees.

**WHEREFORE**, Plaintiff demands judgment against Defendant for Defendant's violation of the FLSA, in an amount exceeding $75,000, as follows:

a. Plaintiffs' unpaid minimum wages;

b. An injunction precluding Defendant from continuing to unfairly pay in any manner prohibited by the FLSA;

c. Liquidated damages in an amount equal to Plaintiffs' unpaid minimum wages;

d. Reasonable attorneys fees, costs, and other expenses of litigation; and

e. Such other legal and equitable relief as the Court deems just and proper.

## COUNT II – PENNSYLVANIA MINIMUM WAGE ACT OF 1968

68. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 67 as if fully restated herein.

69. Defendant's failure to pay Plaintiffs' their earned wages violated the PMWA of 1968, 43 P.S. §§333.101, et seq.

70. 43 P.S. § 333.103 provides that "[i]n determining the hourly wage an employer is required to pay a tipped employe, the amount paid such employe by his or her employer shall be an amount equal to: (i) the cash wage paid the employe which for the purposes of the determination shall be not less than the cash wage required to be paid the employe on the date immediately prior to the effective date of this subparagraph; and (ii) an additional amount on account of the tips received by the employe which is equal to the difference between the wage

specified in subparagraph (i) and the wage in effect under section 4 of this act. The additional amount on account of tips may not exceed the value of tips actually received by the employe."

71. The PMWA definition of tipped employees are modeled after the United States Department of Labor ("USDOL") standard: "The USDOL standards for tipped employees at 29 CFR 531.56 (relating to 'more than $30 a month in tips') in effect as of May 7, 2022, are incorporated by reference with the exception of subsection (f)(4)(ii)." 34 Pa. Code § 231.111.

72. Prior to May 7, 2022, tipped employees were also defined as "an employee engaged in an operation in which the employee customarily and regularly receives more than $30 a month in tips." 34 Pa. Code § 231.1.

73. Plaintiffs qualify as tipped employees. 34 Pa. Code § 231.111.

74. Plaintiffs performed a substantial amount of non-tipped work such that more than 20 percent of their workweek was spent doing non-tipped work. 34 Pa. Code § 231.111.

75. The minimum wage in Pennsylvania is $7.25 per hour worked. 43 P.S. § 333.104.

76. As a direct result of Defendant's violations, Plaintiffs are owed unpaid wages going back up to three years.

**WHEREFORE**, Plaintiff demands judgment against Defendant for Defendant's violation of the Pennsylvania Minimum Wage Law, in an amount exceeding $75,000, as follows:

a. Plaintiffs' unpaid minimum wages;
b. An injunction precluding Defendant from continuing to unfairly pay in any manner prohibited by the PMWA;
c. Reasonable attorneys fees and costs and expenses of litigation; and
d. Such other legal and equitable relief as the Court deems just and proper.

### COUNT III – WAGE PAYMENT AND COLLECTION LAW

77. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 76 as if fully restated herein.

78. Defendant's failure to pay Plaintiffs' their earned wages violated the Wage Payment and Collection Law, 43 P.S. §§ 260.1, et seq. ("WPCL").

79. The WPCL states that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer." 43 P.S. § 260.3.

80. As a direct result of Defendant's violations, Plaintiffs have unpaid wages going back up to three years.

**WHEREFORE**, Plaintiff demands judgment against Defendant for Defendant's violation of the WPCL, in an amount exceeding $75,000, as follows:

a. Plaintiffs' unpaid minimum wages;

b. An injunction precluding Defendant from continuing to unfairly pay in any manner prohibited by the WPCL;

c. Liquidated damages as provided in the WPCL;

d. Reasonable attorneys fees, costs, and other expenses of litigation; and

e. Such other legal and equitable relief as the Court deems just and proper.

### IV.    JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues so triable.


Dated: June 2, 2023                               Respectfully submitted,

                                                  ROTHMAN GORDON, P.C.

                                                  By:  /s/Angela Mauroni Harrod

Angela Mauroni Harrod, Esquire
PA. I.D. No. 332033
310 Grant Street – Third Floor
Pittsburgh, PA 15219
(412) 338-1128 (telephone)
(412) 246-1728 (facsimile)
amharrod@rothmangordon.com
Attorneys for Plaintiffs

4857-4921-8914, v. 3